[L. A. No. 10031. In Bank.—February 28, 1930.]

HAMMOND LUMBER COMPANY (a Corporation), Appellant, v. RICHARDSON BUILDING & ENGINEERING COMPANY, INC. (a Corporation) et al., Respondents.

R. L. Horton, Horton, Anderson, Horton & Armstrong, Joseph K. Horton, C. S. Anderson and M. M. Armstrong for Appellant.

Overton, Lyman & Plumb and Joseph L. Call, *Amici Curiae* for Appellant.

G. C. DeGarmo and Stephens & Stephens for Respondents.

Arnold Proeger, *Amicus Curiae*.

THE COURT.—In this case petition for hearing after decision by the District Court of Appeal, Third Appellate District, was granted so that this court might have an opportunity to carefully consider the questions involved. After a study of the record, we are satisfied with the opinion of the District Court of Appeal, written by Finch, P. J., and hereby adopt the same as and for the opinion of this court, as follows:

"This action was brought against Richardson Building & Engineering Company, a building contractor, and Ella W. Richardson, E. Will Richardson and W. C. B. Richardson, the sureties on the contractor's bond, given pursuant to the provisions of section 1183 of the Code of Civil Procedure, for materials furnished by the plaintiff to the contractor and used in the construction of a building for Edward A. Geissler. The plaintiff was given judgment against the contractor but was denied any relief against the sureties. The plaintiff has appealed from the judgment.

"As required by section 1183, the bond provides that 'the same is hereby expressly made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used in the work described in the said contract, or in any modification thereof; and any and all such persons shall have and are given a right of action to recover upon this bond against the said principal and sureties, or

either of them, in any suit brought to foreclose mechanics' liens, which may be filed by such persons, or any of them upon the property mentioned in said contract, or in a separate suit brought upon this bond, and may recover in such action or actions the value of such labor done or materials furnished, or both, not exceeding, however, in the aggregate of such recoveries, the amount of this bond as above specified.'

"The only defense relied on by the sureties is that they were discharged from liability by alleged acts of the plaintiff, found by the court, substantially in the language of the answer, to be as follows:

" 'That on the 26th day of December, 1923, said defendant Richardson Building and Engineering Co., Inc., as contractor, was indebted to said plaintiff for and on account of building materials furnished by said plaintiff to said Richardson Building and Engineering Co., Inc., for use in various buildings theretofore constructed by said contractor, including the materials furnished by said plaintiff for use in the building described in plaintiff's complaint; that to evidence said entire indebtedness said Richardson Building and Engineering Co., Inc., did on the 26th day of December, 1923, execute to said plaintiff and said plaintiff did accept and receive from said Richardson Building and Engineering Co., Inc., a promissory note for the sum of $23,192.82 payable on or before 90 days from date thereof, with interest at the rate of seven per cent per annum; and said note by its terms provided that the execution and acceptance of said note constituted evidence of said debt as a stated account.

" 'That said note was secured by an assignment to said plaintiff of certain securities belonging to said contractor; and since said time said note and securities have been and are now retained by and are in the possession of said plaintiff.

" 'That prior to the 26th day of December, 1923, the indebtedness referred to in plaintiff's complaint and sued on in this action was an ordinary book account and the same was and had been payable on or before the 28th day of September, 1923; that subsequent to the execution of said note there was a novation of indebtedness sued on herein and said book account was closed, discharged and liquidated

and the same was, subsequent to the 26th day of December, 1923, merged into and became and was an account stated, which account stated included debts other than the one herein sued on.

" 'That at the time of the execution of said note, it was agreed between said plaintiff and said contractor that five per cent should be added to said book account of $4,756.03, making a total of $5,003.40, as alleged in plaintiff's complaint, and said sum of $5,003.40 became and was made a part of said promissory note hereinbefore referred to and described.

" 'That the extension of time given by said plaintiff to said contractor for the payment of said original debt, under and by virtue of the execution of said note, and the substitution of said new account for said original book account, as aforesaid, were given and made by the parties thereto, without the knowledge or consent of the defendant sureties, or either of them; that said defendant sureties did not at any time assume, promise or agree to pay said account stated or said note or any part thereof.'

"The promissory note referred to in the findings contains the following:

" ' 'This note is not given or accepted as payment of said amount due said payee, but as evidence of said debt as a stated account only.' It is not found that the note was given or accepted as payment and the note itself states that it was not so given or accepted. 'In the absence of an agreement to this effect the acceptance is not a payment of the debt.' (*National Lumber Co.* v. *Whalley*, 162 Cal. 224, 226 [121 Pac. 729, 730].)

"The finding that the plaintiff received and accepted the promissory note is based on sharply conflicting evidence and is therefore conclusive on appeal.

"The collateral securities referred to in the findings consisted of a large number of shares of preferred stock of the Jennings Corporation and the contractor's promise to deliver in pledge a large number of shares of the common stock of the First Mortgage Corporation 'when, and only when, permission has been received from the corporation commissioner.' Such permission has never been given. It appears, without contradiction, from affidavits used on plaintiff's motion for a new trial, that 'on or about December

26, 1923, preferred stock of Jennings Corporation . . . was absolutely worthless'; that 'soon after December 26, 1923, the Jennings Corporation became defunct and went out of business'; that the 'common stock of the First Mortgage Corporation was valueless on December 26, 1923'; that 'in fact, it was a liability at that time'; and that 'since then, the First Mortgage Corporation was acquired by another corporation and the common stockholders realized nothing for their stock.' Upon satisfying the obligation of his principal, a surety is entitled to the benefit of securities held by the creditor. (Civ. Code, secs. 2848 and 2849.) The sureties in this case, however, tendered no such issue, and if the alleged securities are of any value the sureties still may enforce their right of subrogation (*Cawston Ostrich Farm* v. *Salomon,* 72 Cal. App. 550 [237 Pac. 808]).

"It is not perceived on what theory it can be held that the sureties were discharged by the alleged stated account between the plaintiff and the contractor. The obligation of the sureties is not to pay the purchase price of the materials originally agreed upon by the plaintiff and the contractor, or the amount agreed upon in the stated account, but the reasonable value of such materials. 'An account stated is a mere unperformed promise by one party to pay a stated sum to another.' (*Bennett* v. *Potter,* 180 Cal. 736, 744 [183 Pac. 156, 159].) 'It is a complete account stated if it contains a signed and written acknowledgment of a present, unqualified indebtedness or liability with a promise to pay a named sum.' (*Gardner* v. *Watson,* 170 Cal. 570, 574 [150 Pac. 994].) The execution and acceptance of a promissory note for the balance of an unsettled account constitute the stating of an account between the parties. (*Kinley* v. *Thelen,* 158 Cal. 175, 183 [110 Pac. 513]; *Bledsoe* v. *Stuckey,* 47 Cal. App. 95, 98 [190 Pac. 217].) If stating an account in a case such as this discharges the sureties, then they would be discharged in all cases where a promissory note is accepted for the balance of an account, contrary to a long line of decisions, a few of which are hereinafter cited.

"Respondent contends that the giving and acceptance of the note constituted an extension of the time of payment and that by reason thereof the sureties were discharged. It is neither alleged nor found that the plaintiff and the con-

tractor made any specific agreement as to the time of payment for materials prior to December 26, 1923, when the note was executed. The finding, in the language of the answer, that the indebtedness 'was an ordinary book account and the same was and had been payable on or before the 10th day of August, 1923,' the day on which the plaintiff's contract was completed, does not imply a specific agreement to make payment at any particular time. Neither does the evidence show that any definite agreement as to the time of payment was made prior to the execution of the note.

 "The time of payment not being fixed, the presumption arises that it was due and payable immediately or on demand when plaintiff's contract to furnish the materials was completed. (Civ. Code, sec. 1657; *Newhall* v. *Sherman, Clay & Co.*, 124 Cal. 509, 511 [57 Pac. 387] ; *Sunset Lumber Co.* v. *Smith*, 95 Cal. App. 307 [272 Pac. 1068].) This presumption applied, of course, in the cases hereinafter cited, where the time for payment had not been specifically agreed upon prior to the acceptance of notes payable at a future date. In construing statutory provisions similar to those of section 1183, it is said:

" 'Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act. In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute.' (*Illinois Surety Co.* v. *John Davis Co.*, 244 U. S. 376 [61 L. Ed. 1206, 37 Sup. Ct. Rep. 614].)

"In the leading case of *United States Fidelity & Guaranty Co.* v. *United States*, 191 U. S. 416 [48 L. Ed. 242, 24 Sup. Ct. Rep. 142], the Circuit Court of Appeals had certified to the Supreme Court of the United States the question whether the act of the company which had furnished materials in taking two promissory notes of the contractor for the amount of its account, 'then due and payable, one of said notes running for thirty days and the other

for sixty days,' operated to discharge the surety. In answering the question in the negative the court said:

" 'In an ordinary guaranty the guarantor understands perfectly the nature and extent of his obligation. . . . In such cases he contracts in reliance upon the exact terms of his principal's undertaking, and has a right to suppose that no change will be made without his consent; and the courts have gone so far as to hold that any change will exonerate him, though it really redound to his benefit.

" 'This covenant, however, is inserted for an entirely different purpose from that of securing to the government the performance of the contract for the construction of the building. . . . The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of sixty days, or whether, after the materials are furnished, the time for payment is extended sixty days, and a note given for the amount maturing at that time. If a person deliberately contracts for an uncertain liability, he ought not to complain when that uncertainty becomes certain. . . . The rule of *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor.'

"In *First Congregational Church of Christ* v. *Lowrey,* 175 Cal. 124, 126 [165 Pac. 440, 441], it is said:

" 'Neither our statute law nor our decisions under it have ever recognized that there is any distinction between a compensated and uncompensated surety or guarantor, nor between a corporate surety and an individual surety, nor between a corporation or an individual engaging in the business of suretyship or guarantyship for compensation

and a corporation or individual who enters into a like contract without compensation.'

"The decision in *United States Fidelity & Guaranty Co.* v. *United States, supra,* has been followed generally by federal and state courts. (*Maryland Casualty Co.* v. *Ohio River Gravel Co.,* 20 Fed. (2d) 514; *United States Fidelity & Guaranty Co.* v. *United States,* 178 Fed. 692; *Chaffee* v. *United States Fidelity & Guaranty Co.,* 128 Fed. 918; *State* v. *Adams,* 187 Ind. 165 [118 N. E. 680]; *George H. Sampson Co.* v. *Commonwealth,* 202 Mass. 339 [88 N. E. 916]; *Watanabe* v. *Ota,* 137 Wash. 368 [43 A. L. R. 1368, 242 Pac. 379].) In several of the cases cited stress is laid upon the fact that the surety was not prejudiced by the extension of the time of payment. In an action by the owner against the sureties on a building contractor's bond it is said that if there has been 'a change in the contract in any material respect, the inquiry there ends, and the guarantor is exonerated, and that it is not a subject of inquiry whether the alteration has not been to his injury.' (*First Congregational Church of Christ* v. *Lowrey, supra.*) This holding, however, was expressly limited in its application by the decision in *Robert* v. *Security Trust & Sav. Bank,* 196 Cal. 557, 565 [238 Pac. 673], which also was an action between the owner and the sureties on a building contractor's bond. No case in this state has been cited which holds, in a suit by laborers or materialmen against the surety on a bond in the terms of the one involved herein, that 'it is not a subject of inquiry whether the alteration has or has not been to his injury.'

"In a case similar in principle to this, in which the defendant surety claimed a discharge from liability for the purchase price of grapes by reason of the taking of trade acceptances by the creditor, it is said:

" 'The bond was given to insure payment of the grapes received by Herman and which he sold on credit. The agreement between the parties with reference to payment to be made by Herman was silent as to any particular due date. At most, the trade acceptances definitely fixed such date. There never was an extension of the time of payment, for without a due date a subsequent agreement fixing such date, is not an extension. Such an agreement merely establishes

the maturity of the obligation which theretofore had been indefinite.' (*Earl Fruit Co.* v. *Herman,* 90 Cal. App. 640 [266 Pac. 592]; *Tyson* v. *Reinecke,* 25 Cal. App. 696 [145 Pac. 153].)

"Respondents rely on *American Bonding Co.* v. *United States,* 233 Fed. 364. In that case, however, there was a definite agreement as to the time of payment, but the terms of the agreement were not observed. The company furnishing the materials 'accepted numerous notes from Wells (the contractor) for such amounts as were agreed upon from time to time . . . and discounted the notes at several banks. These notes were often renewed, the extension sometimes being as much as a year.'

■ "The finding that 'subsequent to the execution of said note there was a novation of indebtedness sued on herein,' is without support in the evidence.

■ "The answer alleges that the 'note was secured by the assignment to plaintiff of certain accounts due and to become due said contractor, . . . and . . . that said plaintiff has collected and received sufficient money from said accounts and securities to pay the claim herein sued on in full.' The court made no finding responsive to this allegation, but the evidence in relation thereto is undisputed. As found by the court, the amount of the note was made up of the balances due for materials used 'in various buildings theretofore constructed by said contractor.' Collections were made by the plaintiff from the owners of two of these buildings and credited in part payment of the balances due for materials used therein. No collection was made by the plaintiff from Geissler. It seems too clear for argument that the sureties on one contract are not entitled to a reduction of their liability on account of partial payments made to their creditor on another contract.

■ "The court found that the reasonable value of the materials furnished by the plaintiff and used by the contractor in the Geissler building is $4,756.03. All other facts are found in the plaintiff's favor except those from which the court concluded that the sureties were discharged from liability. Since the fact found in favor of the sureties are not sufficient to warrant the conclusion reached, there appears to be no good reason to send the case back for a retrial.''

The judgment in favor of the plaintiff against defendant Richardson Building & Engineering Co., Inc., is affirmed. The judgment in favor of defendants Ella W. Richardson, E. Will Richardson and W. C. B. Richardson against the plaintiff is reversed and the trial court is directed to enter judgment on the findings in·favor of. the plaintiff against said defendants Ella W. Richardson, E. Will Richardson and W. C. B. Richardson for the sum of $4,756.03 and costs of suit.